## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Bereket Temesgen, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>     v.<br><br>Macy's, Inc.,<br><br>                        Defendant. | Case No.: 1:24-cv-12237-LTS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT[1]**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Bereket Temesgen ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge, against Defendant Macy's, Inc. ("Defendant" or "Macy's").

## NATURE OF THE ACTION

1.      This is a class action suit brought against Defendant Macy's, Inc. for encroaching upon Plaintiff's and other similarly situated individuals' privacy rights under Mass. Gen. Laws ch. 93, § 105 (the "Massachusetts Consumer Privacy in Commercial Transactions Act" or "CPICTA").

2.      The CPICTA, at § 105(a), reads:

> No person, firm, partnership, corporation or other business entity that accepts a credit card for a business transaction shall write, cause to be written or require that a credit card holder write personal identification information, not required by the credit card issuer, on the credit card transaction form. Personal identification information shall include, but shall not be limited to, a credit card holder's address or telephone number.

> The provisions of this section shall apply to all credit card transactions; provided, however, that the provisions of this section shall not be construed

---

[1] Filed pursuant to the parties' Joint [Proposed] Scheduling Order (ECF No. 15), ¶ 2 ("Amendments to Pleadings[.] Plaintiff … shall be able to do so as of right in response to Defendant's [] motion by no later than December 24, 2024.").

> to prevent a person, firm, partnership, corporation or other business entity from requesting information is necessary for shipping, delivery or installation of purchased merchandise or services or for a warranty when such information is provided voluntarily by a credit card holder.

3.      To summarize, the CPICTA prohibits companies such as Defendant from requiring consumers to providing their personal information (*e.g.*, address, telephone number) when making a credit card transaction, unless such information is necessary for the transaction (*e.g.*, shipping or delivery).

4.      Per the Supreme Judicial Court of Massachusetts, this provision's "purpose was to safeguard consumer privacy and more particularly to protect consumers using credit cards from becoming the recipients of unwanted commercial solicitations from merchants with access to their identifying information." *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 498 (2013).

5.      Nonetheless, and in violation of the CPICTA, Defendant requires each online shopper using its website's credit card transaction form to write personal identification information not required by credit card issuers—their email address.  Macy's also writes and/or causes this information to be written on its website's credit card transaction form.

6.      Defendant then uses the collected email addresses to send unwanted commercial solicitations—spam marketing emails ("Spam")—to said consumers.  In fact, even if consumers chose not to click an email consent checkbox, Defendant still sent shoppers marketing emails.

7.      Mass. Gen. Laws ch. 93, § 105(d) states: "Any violation of the provisions of this chapter shall be deemed to be an unfair and deceptive trade practice, as defined in section 2 of chapter 93A."

8.      Plaintiff therefore brings this action individually and on behalf of a class of all other similarly situated consumers to recover damages and restitution under the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A ("Chapter 93A").

## PARTIES

9.      Plaintiff Bereket Temesgen is a citizen of Massachusetts who resides in Hyde Park, Massachusetts.  In or around May 2022, Mr. Temesgen purchased a dress shirt and a tie online from Macy's, paid by credit card, and checked out via the Macy's website's credit card transaction form (located at www.macys.com).  As part of this process, Mr. Temesgen was required by Macy's to write personal identification information not required by credit card issuers—his email address.  Mr. Temesgen's email address was not a necessary part of the transaction, as it was not required for shipping, delivery, installation, or any other purpose. Shortly after completing his online Macy's purchase, in or around May 2022, Mr. Temesgen began receiving spam marketing emails from Macy's.  Mr. Temesgen never signed up for or otherwise consented to the receipt of this Spam.  Further, the Spam is a nuisance, Macy's caused Mr. Temesgen to waste his time reading or otherwise addressing the Spam, and the Spam consumed valuable storage space in Mr. Temesgen's email mailbox.

10.      Defendant Macy's, Inc. is a Delaware corporation with its principal place of business at 151 West 34th Street New York, New York 10001.  Defendant is the largest department store chain in the nation, and it operates retail locations throughout the Commonwealth.[2]  Defendant targets consumers whom it knows to reside in Massachusetts (based on shipping information provided during checkout) with Spam.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class

---

[2] https://www.macys.com/stores/ma/.

member is a citizen of a state different from Defendant.

12.    This Court has personal jurisdiction over Defendant because Defendant operates

Macy's stores in the state of Massachusetts and processes and ships online orders to individuals

whom it knows to reside in Massachusetts (based on shipping information provided during

checkout).  This includes online orders for pickup at Macy's Massachusetts locations.  Further, a

substantial portion of the events giving rise to this cause of action occurred here.  Plaintiff is

domiciled and suffered her primary injury in this district.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial

portion of the events that gave rise to this cause of action occurred here.  Plaintiff resides in this

District and placed a Macy's online order in this District.

## **FACTUAL ALLEGATIONS**

14.    As industry leaders,[3] trade groups,[4] and courts[5] agree, an email address is

"personal identification information[.]"  The Supreme Judicial Court of Massachusetts has held

that "a zip code may well qualify as personal identification information under § 105 (a). This is

so because . . . a consumer's zip code, when combined with the consumer's name, provides the

merchant with enough information to identify through publicly available databases the

consumer's address or telephone number[.]" *Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 499–

501 (2013).

15.    In interpreting California's Song-Beverly Credit Card Act of 1974, Cal. Civ. Code

---

[3] https://www.adexchanger.com/data-exchanges/can-email-be-the-next-big-online-identifier/
(quoting Tom Kershaw, CTO of Magnite, who said "[a]n email address is universally considered
to be PII[.]").

[4] https://thenai.org/wp-content/uploads/2021/07/nai_code2020.pdf (the Network Advertising
Initiative Code of Conduct, identifying email as PII).

[5] *See United States v. Hastie*, 854 F.3d 1298, 1303 (11th Cir. 2017) ("Email addresses fall within
the ordinary meaning of information that identifies an individual. They can prove or establish the
identity of an individual.").

§ 1747, *et seq.*, the United States District Court for the Eastern District of California compared zip codes and email addresses, finding: "[A] cardholder's email address 'pertain[s] to or regards to a cardholder' in a more specific and personal way than does a ZIP code. . . . Therefore, this Court predicts that the California Supreme Court would decide that an email address constitutes 'personal identification information[.]'" *Capp v. Nordstrom, Inc.*, 2013 WL 5739102, at *6 (E.D. Cal. Oct. 22, 2013) (citations omitted).

16.    That is, just like a zip code, a consumer's email address provides merchants like Defendant with enough information to identify through publicly available databases a consumer's address or phone number.[6]  And as the United States District Court for the Eastern District of California went on to conclude: "Defendant's alleged conduct in this case—acquiring Plaintiff's email address for one reason, . . . and then using the address for another reason, to send him promotional emails . . . directly implicates the purposes of the statute[.]"  *Id.* at *7.

17.    When checking out from Defendant's website, www.macys.com, online shoppers who wish to maintain their privacy, like Plaintiff and other Class Members, are presented with the option to "Checkout as Guest":

//

//

---

[6] Various companies claim the ability to reverse append email addresses to obtain customers' street addresses and telephone numbers.  *See, e.g.,* https://www.edq.com/email-verification/append/ ("Reverse email append service takes email addresses and matches other information you lack"); https://docs.experianaperture.io/identity-append/experian-identity-append/overview/introduction/#reverse-email-append ("Reverse email append is a service that allows you to input an email address and receive the name and address of the individual associated with that email."); https://www.listsolutions.com/our-services/ ("Reverse Email Append[:] Overlay name and address postal information to your email only database"); https://cdn2.hubspot.net/hub/68599/file-310417248-pdf/docs/towerdata_reverseemailappend.pdf ("TowerData's Reverse Email Append service can enhance your email database by adding the names and postal addresses of your customers. You'll gain the ability to market to them through direct mail"); https://dmdatabases.com/data-append/reverse-email-append/ ("What is reverse email append? If you have a database only consisting of email addresses, then we can match the email addresses against a massive cooperative database to append postal addresses, contact names, cell phone numbers, and other valuable data").



18.     Then, a shopper enters their shipping address so that Defendant may estimate shipping and tax costs:



19.     After making this selection, shoppers are required by Defendant to enter their email address into the Macy's website's credit card transaction form, to proceed with the checkout process.  If a consumer attempts to opt out of Defendant's email collection by leaving the email field blank, they are shown an error message that declares, "Enter email address" and they are precluded from continuing to the next checkout stages:



20.     As the foregoing makes clear, there is no reason why a customer must provide their email addresses for a credit card transaction.  A customer furnishes their shipping address for delivery, and they must also provide their phone number (presumably for communications).

21.     In addition, Defendant appears to solicit consent to send future emails to shoppers (with a checkbox marked, "Send me emails about sales, events, new arrivals, and more!").  But *even if consumers choose not to click this box*, Defendant still sends them marketing emails.



22.     As evidence of this, Plaintiff's counsel purchased an item online from Macy's with a credit card on or around December 13, 2023.  Plaintiff's counsel entered an email address but did not check the box labeled "Send me emails about sales, events, new arrivals, and more."

Despite not clicking the box, Defendant then sent Plaintiff's counsel numerous emails over the following months. While some of these emails related to a purchase, the others were solicitations.

23.     For individuals, like Plaintiff and other Class Members, who did not check Defendant's "Send me emails about sales, events, new arrivals, and more[]" box, these commercial solicitations constitute unwanted Spam for which they never signed up and to which they never otherwise consented. Further, because Plaintiff and Class Members are never given the option to not to provide their email address and are sent emails regardless of whether or not they check the box, any consent provided is meaningless and invalid.

24.     The Spam is a nuisance because it interferes with Plaintiff and other Class Members' use and enjoyment of their email mailboxes by, *inter alia*, causing irritation; acting as a distraction; displacing other, more important (and consented-to) emails; and creating visual clutter.

25.     By sending Spam, Macy's caused Plaintiff and fellow Class Members to waste their time reading or otherwise addressing the Spam (i.e., discerning how, if possible, to unsubscribe from the Spam; block Macy's as a sender; and/or report the Spam to their email provider).

26.     The Spam also consumed valuable storage space in Plaintiff and other Class Members' email mailboxes. Many of the most popular free email mailboxes (i.e., Apple's iCloud, Google's Gmail, Microsoft's Outlook, and Proton AG's Proton Mail) have storage limits. A deluge of spam emails, as sent by Defendant, can quickly eat into free email mailbox storage space and force users to expend either time and labor to delete messages or money to procure additional storage space. For paid email mailbox users, spam emails deplete storage space that has been acquired with hard-earned savings.

8

## CLASS REPRESENTATION ALLEGATIONS

27.     Plaintiff seeks certification of the following class: All persons in Massachusetts who made a purchase on www.macys.com using a credit card (The "Class").

28.     Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

29.     The following people are excluded from the Class: (1) any Judge presiding over this action and members of her or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

30.     **Numerosity:** The number of persons within the Class is substantial and believed to amount to thousands, if not millions of persons.  It is, therefore, impractical to join each member of the Class as a named plaintiff.  Further, the size and relatively modest value of the claims of the individual members of the Class render joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Moreover, the Class is ascertainable and identifiable from Defendant's records.

31.     **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions do not vary between members of the Class and may be determined without reference to the

individual circumstances of any Class member.  Such questions include, but are not limited to:

> (a)    whether Defendant's conduct as alleged herein violates Massachusetts law, including the provisions of the CPICTA;

> (b)    whether Defendant is a "person, firm, partnership, corporation or other business entity that accepts a credit card for a business transaction" under Mass. Gen. Laws ch. 93, § 105(a);

> (c)    whether an email address constitutes "personal identification information" under Mass. Gen. Laws ch. 93, § 105(a);

> (d)    whether Plaintiff and Class members were injured by Defendant's conduct;

> (e)    whether Plaintiff and Class members are entitled to damages under Chapter 93A; and

32.    **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff purchased a dress shirt and a tie online, in or around May 2022, from Macy's, paid by credit card, and checked out via the Macy's website's credit card transaction form.  As part of this process, Plaintiff, like all other Class Members, was required by Macy's to write personal identification information not required by credit card issuers—his email address.  Shortly after completing his online Macy's purchase, Plaintiff, like all other Class Members, began receiving Spam from Macy's.  Plaintiff, like all other Class Members, never signed up for or otherwise consented to the receipt of this Spam.  Further, like all other Class Members, Plaintiff experienced how the Spam is a nuisance, Macy's caused Plaintiff to waste his time reading or otherwise addressing the Spam, and the Spam consumed valuable storage space in Plaintiff's email mailbox.

33.    **Adequate Representation:** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of members of the Class will be fairly

and adequately protected by Plaintiff and his counsel.

34.    **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class.  Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

<u>**COUNT I**</u>
**Violation Of Chapter 93A**
**Based On Violation Of The CPICTA**

35.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

36.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

37.    The CPICTA reads:

> No person, firm, partnership, corporation or other business entity that accepts a credit card for a business transaction shall write, cause to be written or require that a credit card holder write personal identification information, not required by the credit card issuer, on the credit card transaction form. Personal identification information shall include, but shall not be limited to, a credit card holder's address or telephone number.

> The provisions of this section shall apply to all credit card transactions; provided, however, that the provisions of this section shall not be

> construed to prevent a person, firm, partnership, corporation or other
> business entity from requesting information is necessary for shipping,
> delivery or installation of purchased merchandise or services or for a
> warranty when such information is provided voluntarily by a credit card
> holder.

Mass. Gen. Laws ch. 93, § 105(a).

38.     Defendant Macy's, Inc. is a "corporation or other business entity[.]"

39.     Defendant "accepts a credit card for business transactions[,]" including for its

online sales of goods to consumers like Plaintiff and other Class Members.

40.     In contravention of the CPICTA, Defendant "write[s], cause[s] to be written or

require[s] that a credit card holder write personal identification information [(the credit card

holder's email address)], not required by the credit card issuer, on the credit card transaction

form."  Mass. Gen. Laws ch. 93, § 105(a).

41.     The word "write" is to be broadly construed.  The Supreme Judicial Court of

Massachusetts has held:

> [T]he language of § 105 (a) naturally appears to include all such
> transactions, whether they are processed manually or electronically. The
> reference to the verb "write" in § 105 (a) does not foreclose such an
> interpretation because by definition, the verb encompasses inscriptions
> made by hand and by typing. Webster's Third New International
> Dictionary 2640-2641 (1993) (defining "write" to include "to form or
> produce [a legible character] in, upon, or by means of a suitable medium,"
> "to produce [symbols or words] by machine," and "to form or produce
> letters, words, or sentences with a pen, pencil, or machine"). *See Allen v.*
> *Boston Redev. Auth.*, 450 Mass. 242, 256, 877 N.E.2d 394 (2007) ("Where
> a statutory term is not defined, it must be understood in accordance with
> its generally accepted plain meaning"); G. L. c. 4, § 6, Third ("Words and
> phrases shall be construed according to the common and approved usage
> of the language").

*Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 505, 984 N.E.2d 737, 747 (2013).

42.     An email address is "personal identification information" because it provides

merchants like Defendant with enough information to identify, through publicly available

databases, a credit card holder (including their address and telephone number).

43.    An email address is "not required by the credit card issuer." Cardholder name, credit card number, expiration date, and/or card verification code are the only four details that credit card issuers require merchants, like Defendant, to collect for online transactions.[7]

44.    The Macy's website's credit card transaction form (located at www.macys.com) is a "credit card transaction form." On March 11, 2013, the Supreme Judicial Court of Massachusetts held:

> Section 105 (a) provides that "[n]o person . . . or . . . business entity that accepts a credit card for a business transaction shall write, cause to be written or require that a credit card holder write personal identification information . . . on the credit card transaction form." G. L. c. 93, § 105 (a). The section affirmatively declares that its provisions "shall apply to *all* credit card transactions" (emphasis supplied), and it contains no language expressly limiting a "credit card transaction form" to a paper form. . . . Based on the words chosen by the Legislature, therefore, we interpret "credit card transaction form" to apply to transactions involving both electronic and paper forms.

*Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 505, 984 N.E.2d 737, 747 (2013). Prior thereto, on January 6, 2012, the United States District Court for the District agreed:

> Michaels contends that the language of the Act does not include an electronically stored transaction form, such as a database, and that the "transaction form" must be a physical document, e.g. a printed slip or receipt. Michaels' Mem. 11–12.
>
> For several reasons, this Court rejects Michaels' argument. The Act provides that Section 105(a) "shall apply to all credit card transactions," Mass. Gen. Laws ch. 93, § 105(a), thus the plain meaning of the words naturally

---

[7] https://upgradedpoints.com/credit-cards/security-code-cvv/ ("all merchants require . . . the cardholder's name, card number, and expiration date. Most merchants also require a CVV code when purchasing online[.]"). *See also* https://www.chase.com/personal/credit-cards/education/basics/why-do-some-sites-not-require-cvv ("when you're making a credit card purchase online[,] . . . in addition to the credit card number and expiration date, you may also be asked for the CVV[.]"); https://money.com/what-is-a-credit-card-cvv/ ("The merchant collects a customer's card information: the account number, the expiration date and the CVV number."); https://listings.pcisecuritystandards.org/documents/Protecting_Telephone_Based_Payment_Card _Data_v3-0_nov_2018.pdf ("[f]or card-not-present (CNP) fraud, a criminal only needs to obtain the PAN [(Primary Account Number, which is the card number)], cardholder name, expiry date and, sometimes, the card verification code[.]").

includes all such transactions, whether they are processed manually, electronically, or by some other method. See *In re Shamus Holdings*, 642 F.3d at 265 ("Unless specially defined, the legislature's words are generally deemed to carry their plain and ordinary meaning." (citing *Boivin*, 225 F.3d at 40)). . . . The natural language of the Act does not distinguish between paper and electronic transaction forms, and an individual who creates an electronic form violates the Act just as does an individual who writes on a paper form. . . . Therefore, the plain meaning of the words "credit card transaction form" under Section 105(a) refer equally to an electronic or a paper transaction form.

*Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 446–47 (D. Mass. 2012).

45.     The CPICTA's limited exception does not apply because an email address is not necessary for shipping, delivery, installation or a warranty, yet Defendant required consumers to provide an email address.

46.     Per the Supreme Judicial Court of Massachusetts, "When a merchant acquires personal identification information in violation of § 105 (a) and uses the information for its own business purposes, whether by sending the customer unwanted marketing materials or by selling the information for a profit, the merchant has caused the consumer an injury that is distinct from the statutory violation itself and cognizable under G.L. c. 93A, § 9." *Tyler*, 464 Mass. at 503-04.

47.     "[R]eceipt of unwanted marketing material as a result of a § 105 (a) violation represents an invasion of the consumer's personal privacy causing injury or harm worth more than a penny, and the consumer is thus entitled to the minimum statutory damage award of twenty-five dollars under G.L. c. 93A, § 9(3)." *Tyler*, 464 Mass. at 504 n.20.

48.     Plaintiff seeks damages as a result of Defendant's violations of Mass. Gen. Laws ch. 93, § 105.  Mass. Gen. Laws ch. 93, § 105(d) states: "Any violation of the provisions of this chapter shall be deemed to be an unfair and deceptive trade practice, as defined in section 2 of chapter 93A."  Thus, Plaintiff seeks statutory damages of not less than twenty-five dollars per violation, the recovery of up to three but not less than two times this amount because Defendant acted willfully and knowingly (*see infra*), and attorney's fees and costs, pursuant to the

Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, *et seq.*

49.    In accordance with Mass. Gen. Laws Ch. 93A, § 9(3), on or around May 8, 2024, Plaintiff's counsel served Defendant with written notice of its violation of Ch. 93A and a demand for relief.  A true and correct copy of the letter is attached hereto as **Exhibit 1**.  Defendant did not make a written tender of settlement for the putative class and denied all wrongdoing.

**COUNT II**
**Violation of Mass. Gen. Laws Ch. 93A, *et seq.***
**("Massachusetts Unfair and Deceptive Business Practices Act")**

50.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

51.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

52.    Section 2 of Chapter 93 – the "Massachusetts Unfair and Deceptive Business Practices Act" – prevents the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce."

53.    Pursuant to the definitions codified at Chapter 93A § 1, Defendant is a "person." Defendant is engaged in "trade" and "commerce" in Massachusetts because Defendant regularly transacts business and contracts to supply services in Massachusetts that directly or indirectly affect the people of Massachusetts – Defendant offers consumer goods for sale online to Massachusettsans like Plaintiff and Class Members.

54.    An act is "deceptive" under Chapter 93A "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted."  *Tagliente v. Himmer*, 949 F.2d 1, 7 (1st Cir. 1991).

55.    Defendant engages in "deceptive" acts, pursuant to this definition.

56.    On macys.com, shoppers are required by Defendant to enter their email address,

to proceed with the checkout process.  If a consumer attempts to opt out of Defendant's email collection by leaving the email field blank, they are shown an error message that declares, "Enter email address" and they are precluded from continuing to the next checkout stages.

57.    Defendant *appears* to solicit consent to send future emails to shoppers (with a checkbox marked, "Send me emails about sales, events, new arrivals, and more!").  But *even if consumers chose not to click this box*, Defendant has still sent shoppers marketing emails.

58.    Defendant's misrepresentation that Macy's online shoppers had agency over whether or not they received Defendant's emails (exercised via the checkbox) was deceptive. Consumers had no agency; Defendant's marketing emails were sent irrespective of consumers' choices.  Therefore, Defendant's emails constitute Spam.

59.    By engaging in the acts and omissions alleged above and incorporated herein, Defendant has engaged in unfair or deceptive acts or practices in the conduct of trade or commerce.

60.    Defendant's misrepresentations deceive and have a tendency to deceive a reasonable consumer and the general public.

61.    Defendant's acts and omissions are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

62.    Defendant's misconduct caused Plaintiff and Class Members to suffer an injury, adverse consequence, or loss.  Per the Supreme Judicial Court of Massachusetts, "When a merchant acquires personal identification information in violation of § 105 (a) and uses the information for its own business purposes, whether by sending the customer unwanted marketing materials or by selling the information for a profit, the merchant has caused the consumer an injury that is distinct from the statutory violation itself and cognizable under G.L. c. 93A, § 9." *Tyler*, 464 Mass. at 503-04.

63.    "[R]eceipt of unwanted marketing material as a result of a § 105 (a) violation represents an invasion of the consumer's personal privacy causing injury or harm worth more than a penny, and the consumer is thus entitled to the minimum statutory damage award of twenty-five dollars under G.L. c. 93A, § 9(3)." *Tyler*, 464 Mass. at 504 n.20.

64.    Further, the Spam is a nuisance; it interferes with Plaintiff and other Class Members' use and enjoyment of their email mailboxes by, *inter alia*, causing irritation; acting as a distraction; displacing other, more important (and consented-to) emails; and creating visual clutter.

65.    By sending Spam, Macy's caused Plaintiff and fellow Class Members to waste their time reading or otherwise addressing the Spam (i.e., discerning how, if possible, to unsubscribe from the Spam; block Macy's as a sender; and/or report the Spam to their email provider).

66.    The Spam also consumed valuable storage space in Plaintiff and other Class Members' email mailboxes.

67.    The Massachusetts Unfair and Deceptive Business Practices Act represents a fundamental public policy of the Commonwealth of Massachusetts.

68.    For each loss, Plaintiff and each Class Member may recover an award of actual damages or twenty-five dollars, whichever is greater.  Mass. Gen. Laws Ch. 93A § 9(3).

69.    Because Defendant acted willfully or knowingly (by misrepresenting that Macy's online shoppers have agency over whether or not they receive marketing emails, to be exercised by a checkbox falsely appearing to solicit consent), Plaintiff and each Class Member may recover up to three but not less than two times this amount.  In addition, Plaintiffs may recover attorneys' fees and costs.

70.    In accordance with Mass. Gen. Laws Ch. 93A, § 9(3), on or around May 8, 2024,

Plaintiff' counsel served Defendant with written notice of its violation of Ch. 93A and a demand

for relief.  A true and correct copy of the letter is attached hereto as **Exhibit 1**.  Defendant did not

make a written tender of settlement for the putative class and denied all wrongdoing.

**RELIEF DEMANDED**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

judgment against Defendant, as follows:

a.    For an order certifying the Class and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b.    For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiff and the Class, on all counts asserted herein;

d.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

h.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: December 24, 2024                Respectfully submitted,

                                        **SMITH KRIVOSHEY, P.C.**

                                        By: */s/ Joel D. Smith*
                                              Joel D. Smith

                                        Joel D. Smith (BBO No. 712418)

867 Boylston Street, 5th Floor
Boston, MA 02116
Telephone: (617) 377-7404
Email: joel@skclassactions.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn*
Max S. Roberts*
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jarisohn@bursor.com
        mroberts@bursor.com

*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*